[No. B080671. Second Dist., Div. Six. June 7, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
THERESA M. CHAFFEY, Defendant and Appellant.

## Counsel

Stein & Casciola and Jeffrey R. Stein for Defendant and Appellant.

Barry T. LaBarbera, District Attorney, for Plaintiff and Respondent.

## Opinion

**GILBERT, J.**—A person takes an overdose of a prescription medicine for the purpose of committing suicide. The label warns that the medicine can cause drowsiness. The overdose does not cause death. It renders the person unconscious so that she has no awareness of what she is doing. While in this unconscious state, she drives a car and is arrested and convicted for driving under the influence of an intoxicating drug.

We hold that under these circumstances a trier of fact could conclude the intoxication is voluntary. We, therefore, affirm the conviction for driving under the influence of an intoxicating drug.

FACTS

Defendant Theresa M. Chaffey tried to commit suicide. She possessed 120 or more Xanax tablets (benzodiazepine). Her doctor had prescribed that she take one for anxiety and two for sleeplessness. This medication had been prescribed to her for over a year and a half.

Chaffey drove to a beach parking lot, got out of her car, locked the ignition key inside, swallowed approximately 120 of the Xanax tablets, and lay down to die.

Sometime later a police officer saw Chaffey driving her car in an erratic manner in a parking lot. The officer stopped her. She could not stand alone and did not respond to questions. A blood test for alcohol was negative, but a test for benzodiazepine was positive. A warning label on the drug states it will cause drowsiness and one should not operate heavy equipment when taking the medication. An overdose of the drug will cause unconsciousness.

Chaffey had no recollection of anything from the time a few minutes after she took the tablets until she awoke in a hospital. The uncontested opinion of her psychiatrist was that when she took the Xanax tablets she did not intend to drive her car, and that when she was driving her car, she was unconscious, and unaware of what she was doing.

These facts were adduced at the hearing in the following manner: Statements by Chaffey's doctor, the officer, and hospital records were received in evidence. The People and Chaffey stipulated that if called as a witness she would testify in accordance with the facts set forth above. There was no conflict in the evidence.

The trial court found that the effect of the drug was unpredicted by Chaffey, but not the intoxicating effect of the drug. The trial court found that the intoxication must have been voluntary because it was "predictable that she would go through a period of sleepiness and that something would happen . . . ."

The trial court convicted Chaffey of a violation of subdivision (a) of Vehicle Code section 23152 which makes it unlawful for a person to drive a vehicle while under the influence of any alcoholic beverage or drug.

Chaffey appealed to the superior court. The appellate department reversed her conviction, with one of the three judges dissenting. The opinion was

certified for publication. In order to secure uniformity of decision and settle important questions of law, we ordered the cause transferred to this court pursuant to rule 62(a) of the California Rules of Court.

## DISCUSSION

■ Chaffey's guilt or innocence depends upon whether the intoxication leading to her unconscious state was voluntary. The law relating to criminal responsibility for unconscious acts is codified by Penal Code sections 22 and 26.

Penal Code section 26 exempts from criminal responsibility "[p]ersons who committed the act charged without being conscious thereof." ■ Such unconsciousness "need not reach the physical dimensions commonly associated with the term (coma, inertia, incapability of locomotion or manual action, and so on); it can exist—and the above-stated rule can apply—where the subject physically acts in fact but is not, at the time, conscious of acting." (*People* v. *Newton* (1970) 8 Cal.App.3d 359, 376 [87 Cal.Rptr. 394], fn. omitted.)

The rule is different for persons who voluntarily become intoxicated. Penal Code section 22 provides in part: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. . . ."

"Unconsciousness caused by voluntary intoxication is governed by Penal Code section 22, rather than section 26, and it is not a defense when a crime requires only a general intent. [Citations.]" (*People* v. *Conley* (1966) 64 Cal.2d 310, 323-324 [49 Cal.Rptr. 815, 411 P.2d 911], fn. omitted.) Does section 22 apply here?

■ Chaffey swallowed the Xanax tablets purposely and with knowledge as to what they were. Does that mean her intoxication was voluntary even though her intent was not to become intoxicated or unconscious, but to end her life?

Cases involving persons tricked into taking an intoxicating substance are instructive in deciding the issue here. ■ California follows the general rule that intoxication resulting from such trickery is not "voluntary." (*People* v. *Scott* (1983) 146 Cal.App.3d 823 [194 Cal.Rptr. 633].) In the *Scott* case defendant drank punch which he believed to be benign. Unknown to him it had been "laced" with an hallucinogen. The appellate court held that his drinking the intoxicating punch was the result of trickery and mistake and, therefore, his intoxication was not voluntary. (*Id.*, pp. 831-832.)

In *People* v. *Velez* (1985) 175 Cal.App.3d 785 [221 Cal.Rptr. 631], the appellate court recognized the *Scott* rule but found its facts distinguishable. In *Velez*, defendant smoked a marijuana cigarette, which, unknown to him, was "laced" with PCP. The *Scott* rule was held to be inapplicable because of common knowledge that "marijuana is frequently contaminated with PCP or other psychoactive drugs. . . ." (*Id.* at p. 795.)

A person whose intoxication is not voluntary is relieved from liability because of excusable mistake. "What prevents the intoxication from being voluntary in these cases of fraud is not the trickery of the other person but the innocent mistake of fact by the one made drunk, and an actual ignorance of the intoxicating character of the liquor or drug has the same effect whether the mistake is induced by the artifice of another or not. [Fn. omitted.]" (Perkins on Criminal Law (2d ed. 1969) p. 895.) Perkins relies on a long line of cases starting with *State* v. *Brown* (1888) 38 Kan. 390 [16 P. 259], which states in part: "[N]o sufficient reason can be given for punishing those who have become drunk through unavoidable accident, or through an honest mistake. . . ." (*Id.* at p. 260.)

In *Com.* v. *Wallace* (1982) 14 Mass.App. [439 N.E.2d 848, 850], the appellate court stated, "Although the circumstances of a person who drives after taking a prescription drug unaware of its possible effects differ significantly from those of a person forced to drive after having a potion rammed down his throat or after being tricked, such circumstances also differ substantially from those of a person who drives after voluntarily consuming alcohol or drugs whose effects are or should be known. The law recognizes the differences, and authorities have characterized as 'involuntary intoxication by medicine' the condition of a defendant who has taken prescribed drugs with severe unanticipated effects. [Citations.]" (Fn. omitted.)

In *City of Minneapolis* v. *Altimus* (1976) 306 Minn. 462 [238 N.W.2d 851], the appellate court held it to be reversible error not to have given a requested instruction which read, " 'Intoxication is involuntary when it is produced in a person without his willing and knowing use of . . . drugs . . . and without his willing assumption of the risk of possible intoxication.' " (*Id.* at p. 854, fn. 2.) The Minnesota Supreme Court opinion states: "Several courts have declared that such intoxication constitutes a valid defense to criminal liability if the prescribed drug is taken pursuant to medical advice and without the defendant's knowledge of its potentially intoxicating effects. [Citations.]" (*Id.* at p. 857.)

In *People* v. *Turner* (Colo.Ct.App. 1983) 680 P.2d 1290, 1293, defendant was charged with robbery. His defense was that he had not been warned of

the effects of ingesting excessive doses of a prescription drug and that his past experience in taking excessive doses of the drug caused him to believe that he would go to sleep, not that he would become intoxicated. The Colorado Court of Appeals held this defense of involuntary intoxication was a proper question for the jury to determine "in light of the credibility of the witnesses, common knowledge, and the implicit warning in the prescribed dosage."

The Model Penal Code in section 2.08, subdivision (5)(b) (1962) defines self-induced intoxication as "intoxication caused by substances that the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know . . . ."

The well-written opinion of the appellate department authored by Judge Christopher G. Money contained a cogent analysis of the law pertaining to involuntary intoxication. The majority reversed the trial court because it held that on the undisputed facts as a matter of law Chaffey did not know and a reasonable person in her condition would not have known that taking an overdose of this medication would have caused intoxication. From this premise the majority concluded that her intoxication was involuntary and thus her unconsciousness stands as an invulnerable defense to the charges.

 Although a trier of fact could legitimately have made such findings, that was not the case here. Undisputed facts do not necessarily lead to undisputed conclusions concerning those facts. There was no question but that trial Judge Donald G. Umhofer had a good grasp of the law which he correctly applied. As the incisive dissent of Judge Barry Hammer points out, the trial court did not have to accept at face value that Chaffey did not have reason to anticipate the intoxicating effect of the drug she took. She voluntarily swallowed the Xanax tablets. The label warned her that the medication would cause drowsiness. There was substantial evidence here from which the trier of fact could conclude that Chaffey's intoxication was voluntary.

It may be true that she did not intend or even expect to be able to stand up let alone drive a car. Although such a specific event was not predictable or necessarily foreseeable from her past experience with Xanax, it is possible as the trial judge stated that she ". . . would go through a period of sleepiness and that something would happen in that period of time . . . ."

This case is not so different than if Chaffey had consumed alcohol instead of Xanax. It is true as Chaffey points out sleepiness behind the wheel as a result of ingestion of alcohol is a matter of common knowledge, well within the experience of the average person. Although Xanax may not be as well known as alcohol, it was reasonably foreseeable, as the trial court opined,

that before achieving sleep something could occur while Chaffey was in a state of intoxication.

Although the trier of fact could have found that Chaffey's intoxication was not voluntary, such a finding was not compelled. The judgment is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.