**Douglas Leroy VALENTINE, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–12692.**

Supreme Court of Alaska.

Aug. 28, 2009.

---

**26.** *See* AS 09.17.040(b).

**27.** 97 P.3d 822, 829 (Alaska 2004).

Robert John, Law Office of Robert John, and Lawrence F. Reger, McConahy, Zimmerman & Wallace, Fairbanks, for Petitioner.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Respondent.

Before: FABE, Chief Justice,
EASTAUGH, CARPENETI, WINFREE,
and CHRISTEN, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In 2004 the Alaska Legislature made two significant changes to the driving under the influence (DUI) law. First, the legislature amended subsection (a)(2) of AS 28.35.030 to provide that a person commits a DUI offense if the person takes a chemical test within four hours of driving that detects a blood alcohol level of at least 0.08 percent, regardless of the person's blood alcohol at the time of driving. This is known as the "blood-alcohol-level" theory of DUI. Second, the legislature barred defendants charged with DUI from presenting a "delayed-absorption" defense claiming that the results of their post-arrest chemical tests did not accurately indicate their blood alcohol level at the time they were driving. These two amendments did not revise the language of subsection (a)(1) of AS 28.35.030, which makes it a crime to drive while under the influence of alcohol, regardless of blood alcohol, and is known as the "under-the-influence" DUI theory.

Douglas Valentine was convicted under the amended DUI law in a general verdict that did not specify whether he was convicted under the blood-alcohol-level theory, the under-the-influence theory, or both. The court of appeals affirmed his conviction upon concluding that the 2004 amendments survived all of Valentine's constitutional challenges. But Judge David Mannheimer dissented in part, concluding that defendants are denied due process of law when they are barred from offering delayed-absorption evidence in prosecutions that rely on chemical test results and are brought under the under-the-influence theory. He reasoned that because DUI convictions under this theory continue to require proof that the defendants were under the influence at the time of driving, "the evidentiary prohibition codified in AS 28.35.030(s) violates a defendant's right to due process of law." [1]

---

1. *Valentine v. State,* 155 P.3d 331, 352 (Alaska App.2007) (Mannheimer, J., dissenting).

We granted Valentine's petition for hearing. We conclude that the legislature properly exercised its broad authority to redefine the blood-alcohol-level theory of the DUI offense. But we agree with Judge Mannheimer that defendants are denied due process if they are barred from presenting delayed-absorption evidence in prosecutions relying on chemical test results to prove that they are guilty of a DUI offense under subsection (a)(1)'s under-the-influence theory. Because the jury's general verdict did not specify which theory provided the basis for Valentine's conviction, we reverse the conviction and remand for a new trial.

## II. FACTS AND PROCEEDINGS

On June 18, 2005, at about 8:45 p.m., Fairbanks Police Sergeant Dan Welborn stopped Douglas Valentine for speeding.[2] He noticed that Valentine had a moderate odor of alcohol and that his eyes were watery and bloodshot. Sergeant Welborn administered three field sobriety tests, which Valentine failed, and then placed Valentine under arrest. At the station at 9:20 p.m., Valentine submitted to a breath test, which showed a blood alcohol level of 0.099 percent. Valentine requested an independent test, which he obtained at 9:45 p.m. That blood test showed a blood alcohol level of 0.119 percent. The State charged Valentine under both AS 28.35.030 theories for committing a DUI offense: it alleged that Valentine was under the influence at the time of driving under subsection (a)(1) and that a chemical test showed that Valentine's blood alcohol level was above the legal limit under subsection (a)(2).

Before trial, Valentine filed a motion to dismiss, challenging the constitutionality of the 2004 amendments to the DUI law. District Court Judge Winston S. Burbank denied the motion to dismiss. In his decision, Judge Burbank incorporated by reference an earlier ruling by District Court Judge Raymond Funk rejecting the same constitutional claims in a consolidated Fairbanks case, *State v. Baxley, Marshall & Tyler*.[3] The effect of the district court's ruling was to prohibit Valentine from offering evidence to show that even though his blood alcohol level was above the legal limit at the time of his two chemical tests, he was not guilty of driving while under the influence under either theory because at the time he drove the alcohol he had consumed had not yet been fully absorbed into his bloodstream.

Valentine's case then proceeded to trial before Superior Court Judge Donald D. Hopwood, who was sitting pro tem for the district court. At trial, Valentine argued that he had consumed two beers, that people absorb alcohol at different rates, that there was ample evidence that he was not impaired at the time he performed the field sobriety tests, and that the State had no evidence of his actual blood alcohol level at the time of driving. The jury convicted Valentine using a general verdict form that did not specify whether he was convicted under subsection (a)(1), subsection (a)(2), or both.

Valentine appealed the denial of his motion to dismiss. The court of appeals affirmed Valentine's conviction, concluding that the amendments to the DUI law withstood all of Valentine's constitutional challenges.[4] The court of appeals determined that (1) the amendments are not unconstitutionally vague; (2) the amendments are not unconstitutionally overbroad; (3) the amendments do not impose criminal liability without any proof of mens rea; (4) the amendments do not violate Valentine's right to due process by creating impermissible presumptions; (5) the amendments do not deny Valentine's right to an independent test; (6) the amendments do not violate the Alaska Constitution's guarantee of equal protection; and (7) the amendments do not unconstitutionally infringe on our rule-making power.[5] Judge

---

**2.** This description of the facts and proceedings is largely drawn from the court of appeals' decision in this case. *See id.* at 335–36 (majority opinion).

**3.** 4FA–04–770 CR, 4FA–04–2284 CR, and 4FA–04–2695 CR, respectively.

**4.** *Valentine*, 155 P.3d at 335, 348.

**5.** *Id.* at 339–48.

David Mannheimer dissented in part.[6] Judge Mannheimer "conclude[d] that the evidentiary prohibition codified in AS 28.35.030(s) violates a defendant's right to due process of law when the defendant is prosecuted for DUI under AS 28.35.030(a)(1) and the government relies on the result of a post-driving chemical test."[7] We granted Valentine's petition for hearing.[8]

## III. STANDARD OF REVIEW

We apply our independent judgment to questions involving the constitutionality of a statute "and will adopt the rule of law which is most persuasive in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

### A. The 2004 Amendments to the DUI Law

The Alaska Legislature amended AS 28.35.030 in 2004 [10] in response to the court of appeals' decision in *Conrad v. State*, which held that former AS 28.35.030(a)(2) required the government to prove that the defendant's blood alcohol level was 0.08 percent or higher at the time that the defendant was operating or controlling a motor vehicle.[11] In *Conrad*, the defendant presented a delayed-absorption defense, claiming that the results of his post-arrest chemical tests did not accurately indicate his blood alcohol at the time that he was driving.[12] Charles Conrad alleged that he had quickly consumed two beers just before he drove and that his bloodstream had not fully absorbed the alcohol from those beers at the time that he was driving.[13] Conrad maintained that his blood alcohol was below the allowable level while he was driving even though his post-arrest chemical test results were above the legal limit.[14] The trial court, however, instructed the jury that Conrad's guilt under the pre-amendment version of AS 28.35.030(a)(2) hinged on whether the government had proved that a properly administered chemical test had yielded a result that was above the legal limit.[15] The jury convicted Conrad.[16]

The court of appeals reversed the conviction and ruled that Conrad was entitled to a new trial, "conclud[ing] that a defendant's

**6.** *Id.* at 348 (Mannheimer, J., dissenting).

**7.** *Id.* at 352.

**8.** Valentine petitioned for hearing on all of the court of appeals' holdings except for its decision concerning our rule-making power, and the parties briefed each of these issues. We conclude that the petition for hearing was improvidently granted on each issue except for the question whether a defendant is denied due process of law by subsection (s)'s exclusion of delayed-absorption evidence in a prosecution under subsection (a)(1) that relies on a chemical test result.

**9.** *State v. Murtagh*, 169 P.3d 602, 606 (Alaska 2007) (internal quotation marks omitted).

**10.** Ch. 124, §§ 25, 27, SLA 2004.

**11.** 54 P.3d 313, 313 (Alaska App.2002), *superseded by statute*, ch. 124, §§ 25, 27, SLA 2004, *as recognized in Valentine*, 155 P.3d at 337. AS 28.35.030(a)(2) defines the offense using three metrics. Under this subsection, a person commits the DUI offense when a properly administered chemical test yields a result of (1) "0.08 percent or more by weight of alcohol in the person's blood," (2) "80 milligrams or more of alcohol per 100 milliliters of blood," or (3) "0.08 grams or more of alcohol per 210 liters of the person's breath." References to a result of at least 0.08 percent blood alcohol content incorporate the other two metrics by which the subsection (a)(2) offense is defined.

**12.** 54 P.3d at 314. In *Conrad* and the 2004 legislative hearings, this defense was described as the "big gulp" defense, which was a reference to the possibility that a driver had quickly drunk a large quantity of alcohol shortly before being stopped by the police. *See, e.g., id.;* Minutes, H. Finance Comm. Hearing on S.B. 170, 23d Leg., 2d Sess. 8 (May 5, 2004) (statement of Susan Parkes, Deputy Att'y Gen., Criminal Div., Dep't of Law); Minutes, S. Judiciary Comm. Hearing on S.B. 170, 23d Leg., 2d Sess. 26 (March 24, 2004) (statement of Susan Parkes, Deputy Att'y Gen., Criminal Div., Dep't of Law). But "delayed absorption" is a better description of the defense because the critical element of the defense is that the absorption of alcohol in the driver's bloodstream was delayed for one of many possible reasons, including taking a "big gulp," eating a large meal, and being ill. *Valentine*, 155 P.3d at 349 n. 1 (Mannheimer, J., dissenting).

**13.** *Conrad,* 54 P.3d at 314.

**14.** *Id.*

**15.** *Id.*

**16.** *Id.*

guilt under [former] AS 28.35.030(a)(2) hinges on the defendant's blood alcohol content at the time the defendant operated or controlled a motor vehicle."[17] The court of appeals reasoned that the legislature had not intended to define the offense in terms of the defendant's blood alcohol at the time of the chemical test but noted that it appeared that the legislature had the authority to do so, as other state legislatures had explicitly done.[18] In addition, the court of appeals interpreted AS 28.33.033 as authorizing the government to rely on the rebuttable presumption that the defendant's blood alcohol content while driving was at least as high as the result of a properly administered chemical test.[19] The court of appeals held that this presumption was sufficient to support a conviction.[20]

The effect of the court of appeals' decision was to permit a defendant to present a delayed-absorption defense to show that a chemical test result was not an accurate indicator of the defendant's blood alcohol at the time the defendant was driving. According to the experts who testified at the evidentiary hearing before District Court Judge Funk,[21] there is a delay between a person's consumption of alcohol and the absorption of alcohol into the person's bloodstream. Typically within an hour after a person has stopped drinking, the person's body has absorbed much of the alcohol consumed and is eliminating alcohol from the bloodstream faster than it is absorbing it—that is, the point of "peak" blood alcohol level has passed. But in some people this "peak" point may not be reached for up to four hours after drinking because the rate at which the body absorbs alcohol depends on a variety of factors, including consumption of food, having an upset stomach, and the type of alcohol consumed. Therefore, it is possible that a person's blood alcohol at the time of driving was lower than at the time the person took a post-arrest chemical test. In offering a delayed-absorption defense, a defendant could argue that even though a post-arrest chemical test result was illegally high, the defendant's blood alcohol level when the defendant was stopped was below the allowable limit.

In response to *Conrad*, the Alaska Legislature made two significant changes to AS 28.35.030.[22] First, the legislature amended subsection (a)(2) to redefine the blood-alcohol-level theory of the DUI offense in terms of a defendant's blood alcohol at the time that the defendant took a properly administered chemical test rather than at the time of driving.[23] Now, a person violates subsection (a)(2) if the person takes a chemical test within four hours of operating or driving a motor vehicle that yields a result of a blood alcohol level of 0.08 percent or higher, regardless of the person's blood alcohol at the time of driving.

But in amending subsection (a)(2)'s blood-alcohol-level theory of the DUI offense, the legislature did not revise subsection (a)(1)'s

---

17. *Id.* at 315.

18. *Id.*

19. *Id.*

20. *Id.*

21. The court of appeals permitted the record in this case to be supplemented with the expert testimony presented in Judge Funk's consolidated case, *State v. Baxley*. *Valentine v. State*, 155 P.3d 331, 336 (Alaska App.2007).

22. Ch. 124, §§ 25, 27, SLA 2004.

23. Chapter 124, section 25 of SLA 2004 amended AS 28.35.030(a) by adding the underlined text and deleting the text in brackets:

    (a) A person commits the crime of driving while under the influence of an alcoholic beverage, inhalant, or controlled substance if the person operates or drives a motor vehicle or operates an aircraft or a watercraft

    (1) while under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, *singly or in combination; or*

    (2) *and if* [WHEN], as determined by a chemical test taken within four hours after the alleged *operating or driving* [OFFENSE WAS COMMITTED], there is 0.08 percent or more by weight of alcohol in the person's blood or 80 milligrams or 08 more of alcohol per 100 milliliters of blood, or *if* [WHEN] there is 0.08 grams or more of alcohol per 210 liters of the person's breath [; OR

    (3) WHILE THE PERSON IS UNDER THE COMBINED INFLUENCE OF AN ALCOHOLIC BEVERAGE, AN INTOXICATING LIQUOR, AN INHALANT, AND A CONTROLLED SUBSTANCE].

under-the-influence theory, which makes it a DUI offense to drive or operate a motor vehicle while under the influence of alcohol or controlled substances.

Second, the legislature added a new subsection to the DUI law that prohibits defendants from raising delayed-absorption defenses to DUI charges.[24] Under AS 28.35.030(s), defendants are permitted to rebut the results of chemical tests by introducing evidence concerning the quantity of alcohol consumed before or after driving "but the consumption of alcohol before operating or driving may not be used as a defense that the chemical test did not measure the blood alcohol at the time of the operating or driving." Deputy Attorney General Parkes explained that the intent of adding subsection (s) in conjunction with amending subsection (a) was to "do away with [the delayed-absorption] defense and overturn a case called *Conrad*."[25] Senator Hollis French voiced his support for the changes to AS 28.35.030, remarking that he "totally support[ed] the intent of the amendment, that being to keep someone from saying they had four shots of whiskey and drove home before the alcohol had any effect."[26]

As the court of appeals discussed, the dual purposes of the amendments to the DUI law were to make a chemical test result determinative of a defendant's guilt under subsection (a)(2) and to eliminate the delayed-absorption defense to prosecutions under both subsections (a)(1) and (a)(2):

This legislative history, and the plain language of the amended statutes, indicate that the legislature intended to accomplish two things through this legislation. First, it intended to hinge a defendant's guilt in a driving while under the influence prosecution under subsection (a)(2) on the result of a chemical test properly administered within four hours of driving (if the test result is attributable to alcohol ingested before or during the operation of a motor vehicle). And, second, it intended to eliminate a "delayed absorption" defense to any prosecution under subsection (a)(1) or (a)(2) that relies in whole or in part on the result of a chemical test, so that defendants may not argue based on alcohol absorption rates that the result of their chemical test did not reflect their actual alcohol level at the time of driving.[27]

Thus, as subsection (s) is applied to a subsection (a)(2) blood-alcohol-level prosecution, the question whether a driver's blood alcohol while driving was above the legal limit is immaterial because the driver violates the subsection by taking a properly administered chemical test after driving that yields a result of at least 0.08 percent.

But the delayed-absorption defense is still relevant to prosecutions under subsection

24. Chapter 124, section 27 of SLA 2004 amended AS 28.35.030 by adding a new subsection (s), which provides:

> (s) In a prosecution under (a) of this section, a person may introduce evidence on the amount of alcohol consumed before or after operating or driving the motor vehicle, aircraft, or watercraft to rebut or explain the results of a chemical test, but the consumption of alcohol before operating or driving may not be used as a defense that the chemical test did not measure the blood alcohol at the time of the operating or driving. Consumption of alcohol after operating or driving the motor vehicle, aircraft, or watercraft may be used to raise such a defense.

In recognition of this new subsection, chapter 124, section 29 of SLA 2004 added the underlined text and deleted the text in brackets in AS 28.35.033(c):

> (c) *Except as provided in AS 28.35.030(s), the* [THE] provisions of (a) of this section may not be construed to limit the introduction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor.

25. Minutes, S. Judiciary Comm. Hearing on S.B. 170, 23d Leg., 2d Sess. 26 (March 24, 2004) (statement of Susan Parkes, Deputy Att'y Gen., Criminal Div., Dep't of Law) (typeface altered and internal quotation marks omitted); *accord* Minutes, H. Judiciary Comm. Hearing on H.B. 244, 23d Leg., 2d Sess. 9 (April 2, 2004) (statement of Dean J. Guaneli, Chief Assistant Att'y Gen., Legal Servs. Section–Juneau, Criminal Div., Dep't of Law) ("The intent of these entire provisions [is] to prevent the 'big gulp' defense, so to speak, and that arose as a result of [an] Alaska Court of Appeals opinion." (alterations in original) ).

26. Minutes, S. Judiciary Comm. Hearing on S.B. 170, 23d Leg., 2d Sess. 22 (March 31, 2004) (statement of Sen. Hollis French).

27. *Valentine v. State*, 155 P.3d 331, 339 (Alaska App.2007).

(a)(1). A defendant's guilt in a DUI prosecution under this subsection turns on whether the defendant was "under the influence" while operating or driving a motor vehicle. If the government offers evidence of the result of a properly administered chemical test after the defendant was stopped, this evidence does not directly prove that the defendant was impaired while driving because the chemical test result shows the percentage of alcohol in the defendant's bloodstream at the time that the test was administered. Yet under AS 28.35.033, the statutory provision concerning presumptions arising from chemical tests, a result of 0.08 percent or higher creates a rebuttable presumption that the defendant was under the influence of alcohol at the time of driving.[28] The statute provides that this presumption may be rebutted by "any other competent evidence bearing upon" whether the person was impaired. Moreover, Alaska Rule of Evidence 303(a)(1) provides that the trial court must instruct the jury that it "may, but is not required to, infer the existence of the presumed fact." Thus, the government may rest its case against a defendant solely on evidence of a chemical test result of at least 0.08 percent, though the jury need not infer that the chemical test result accurately reflects the defendant's blood alcohol content at the time of driving. But the adoption of subsection (s) created an exception to the rule that competent evidence may be introduced to rebut the presumption and bars

evidence of "the consumption of alcohol before operating or driving" that is introduced by the defendant "as a defense that the chemical test did not measure the blood alcohol at the time of the operating or driving."

### B. Alaska Statute 28.35.030(s)'s Exclusion of Delayed–Absorption Evidence in a Prosecution Under AS 28.35.030(a)(1) that Relies on a Chemical Test Result Violates a Driver's Right to Due Process.

■ Under the United States and Alaska Constitutions, a defendant has the right to present relevant exculpatory evidence in a criminal trial.[29] The United States Supreme Court has recognized that criminal defendants are guaranteed "a meaningful opportunity to present a complete defense" by the United States Constitution, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment."[30] Similarly, we have held that "a defendant's right to present a defense is a fundamental element of due process."[31] This right, however, "is not absolute" because it is properly limited by other considerations, such as relevance and Alaska Evidence Rule 403's balancing test.[32] As the United States Supreme Court has explained, the need to "accommodate other legitimate interests in the criminal trial pro-

28. *See* AS 28.35.033(a)(3) (providing that "at the time alleged" that the person violated the DUI statute "it shall be presumed that the person was under the influence of an alcoholic beverage" if the person's blood alcohol content was at least 0.08 percent); *see also Doyle v. State,* 633 P.2d 306, 307, 310 (Alaska App.1981) (explaining that the presumptions of AS 28.35.033 apply to the time that the defendant was allegedly driving under the influence in violation of AS 28.35.030).

29. *See, e.g., Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal quotation marks omitted) ); *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (discussing the limits imposed on "an

accused's right to present a defense"); *Montana v. Egelhoff,* 518 U.S. 37, 42–43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion) ("[T]o say that the right to introduce relevant evidence is not absolute is not to say that the Due Process Clause places *no* limits upon restriction of that right." (emphasis in original) ); *Smithart v. State,* 988 P.2d 583, 586 (Alaska 1999) ("[A] defendant's right to present a defense is a fundamental element of due process."); *Keith v. State,* 612 P.2d 977, 982–83 (Alaska 1980) (noting that if the court's exclusion of evidence "substantially limit[ed]" the defendant's "opportunities to prove his innocence affirmatively, the due process right to a fair trial would have been denied him").

30. *Holmes,* 547 U.S. at 324, 126 S.Ct. 1727 (internal quotation marks omitted).

31. *Smithart,* 988 P.2d at 586.

32. *Id.* at 586 & n. 7.

cess" gives legislators "broad latitude under the Constitution to establish rules excluding evidence from criminal trials."[33] But a defendant's due process rights are denied when a legislative enactment substantially limits the right to present a defense.[34]

In addressing whether the Due Process Clause was violated by Montana's statutory prohibition on presenting evidence of voluntary intoxication to determine whether the defendant had the necessary mental state to commit the offense, Justice Ginsburg framed the issue as "a question of characterization":

> If [the Montana statute] is simply a rule designed to keep out "relevant, exculpatory evidence," [as] Justice O'Connor maintains, Montana's law offends due process. If it is, instead, a redefinition of the mental-state element of the offense, on the other hand, Justice O'Connor's due process concern "would not be at issue," for "[a] state legislature certainly has the authority to identify the elements of the offenses it wishes to punish," and to exclude evidence irrelevant to the crime it has defined.[35]

Justice Ginsburg cast the deciding vote to hold that the Montana statute did not violate due process when she concluded in her concurring opinion that the statute was not "merely an evidentiary prescription" but "the judgment that two people are equally culpable where one commits an act stone sober[ ] and the other engages in the same conduct after his voluntary intoxication has reduced his capacity for self-control."[36]

■ The Alaska Legislature properly used its broad discretion to redefine the elements of the blood-alcohol-level theory of the

DUI offense when it amended subsection (a)(2).[37] The legislative amendment to subsection (a)(2) changed the conduct necessary to commit a DUI offense under the blood-alcohol-level theory. Under the prior version of subsection (a)(2), a driver committed a DUI offense if the driver's blood alcohol level was 0.08 percent or higher at the time of driving. Now, a driver violates subsection (a)(2) if the driver's chemical test result is 0.08 percent or higher within four hours of driving. In a House Judiciary Committee discussion of the House version of the bill amending subsection (a)(2), Representative Les Gara recognized that the amendment to subsection (a)(2) changed what behavior is punishable: "we're changing the substance of the crime . . .; we're changing policy here."[38] The redefinition of the conduct element of the blood-alcohol-level theory rendered a defendant's blood alcohol at the time of driving irrelevant and thus inadmissible. For this reason, subsection (s)'s exclusion of delayed-absorption evidence does not infringe upon the defendant's right to present relevant exculpatory evidence in a DUI prosecution under subsection (a)(2).

But the 2004 amendments to the DUI law left the substance of the subsection (a)(1) crime unchanged. To prove a DUI charge using the under-the-influence theory, the prosecution must demonstrate that the driver was impaired at the time of driving. Whether a chemical test result accurately indicates a driver's blood alcohol content at the time of driving continues to be relevant to prosecutions under subsection (a)(1) if they rely on

---

**33.** *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261.

**34.** *Cf. Smithart*, 988 P.2d at 586 ("When a trial court's evidentiary rulings substantially infringe upon the right to present a defense, the court necessarily violates the defendant's due process rights."); *Keith*, 612 P.2d at 982–83 ("If the superior court's refusal to admit the journal did, in fact, substantially limit Keith's opportunities to prove his innocence affirmatively, the due process right to a fair trial would have been denied him.").

**35.** *Montana v. Egelhoff*, 518 U.S. 37, 56–57, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (Ginsburg, J., concurring) (citations omitted).

**36.** *Id.* at 57, 116 S.Ct. 2013.

**37.** *See Abruska v. State*, 705 P.2d 1261, 1265–66 (Alaska App.1985) (holding that it was within the legislature's prerogative to define the element of knowledge of the proscribed conduct or relevant circumstances necessary for unlawful activity to exclude consideration of intoxication); *Neitzel v. State*, 655 P.2d 325, 334–35 (Alaska App.1982) ("We do not consider the legislative judgment to preclude consideration of intoxication in determining recklessness so irrational that it violates due process.").

**38.** Minutes, H. Judiciary Comm. Hearing on H.B. 244, 23d Leg., 2d Sess. 13–14 (April 2, 2004) (statement of Rep. Les Gara).

chemical test results. Yet under subsection (s), defendants are denied the opportunity to present delayed-absorption evidence to show that even though their chemical test result was above the legal limit they were not impaired when they drove. As Judge Mannheimer concluded, subsection(s)'s prohibition on delayed-absorption evidence in prosecutions under subsection (a)(1) that rely on chemical test results "unjustifiably prevents defendants from introducing evidence that is both scientifically valid and directly relevant to the question of whether the defendant was impaired by alcohol at the time of driving." [39]

At Valentine's trial, the jury was instructed that he could be found guilty of driving under the influence under subsection (a)(1)'s under-the-influence theory or subsection (a)(2)'s blood-alcohol-level theory. Because the jury convicted Valentine using a general verdict form, it is not known whether he was found guilty under subsection (a)(1), subsection (a)(2), or both. As we concluded in *Williford v. State*,[40] we must therefore reverse the conviction and remand for a new trial.

## V. CONCLUSION

Because a DUI conviction under subsection (a)(1) of AS 28.35.030 continues to require proof that the defendant was under the influence at the time of driving, subsection (s)'s exclusion of delayed-absorption evidence in prosecutions under subsection (a)(1) that rely on chemical test results violates the defendant's right to due process. Accordingly, we REVERSE Valentine's conviction and REMAND for a new trial.

---

**39.** *Valentine v. State*, 155 P.3d 331, 351 (Alaska App.2007) (Mannheimer, J., dissenting).

**40.** 674 P.2d 1329, 1332 (Alaska 1983) (remanding for a new trial to determine whether the defendant was convicted under AS 28.35.030(a)(1) when it could not be ascertained whether the defendant was convicted under this provision or AS 28.35.030(a)(3), which was held to be unconstitutionally vague).