Clarence SOLOMON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10364.

Court of Appeals of Alaska.

March 26, 2010.

Brian T. Duffy, Assistant Public Advocate, Appeals & Statewide Defense Section, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Joseph Dallaire, Assistant District Attorney, Fairbanks, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Clarence Solomon appeals his conviction for driving under the influence, AS 28.35.030(a). At his trial, Solomon introduced evidence that his intoxication stemmed from his ingestion of approximately one quart of NyQuil® cold medicine. Solomon further claimed that he did not read the label on the NyQuil bottles (which stated that NyQuil contained 10 percent alcohol), and that he remained unaware that NyQuil contained alcohol or that NyQuil might otherwise be an intoxicant.

Based on this evidence, Solomon asked the trial judge to instruct the jury that he should be acquitted of the DUI charge unless the State proved that he "knowingly" ingested an intoxicant—that is, unless the State proved that Solomon had actual knowledge that NyQuil was an intoxicant. Solomon also asked the trial judge to instruct the jury on the defense of "involuntary intoxication", but this request was simply a reformulation of Solomon's underlying assertion that the State was obliged to prove that he had actual knowledge that NyQuil was an intoxicant. The trial judge rejected both of these requests, and Solomon now claims that this was error.

■ As we explain more fully in this opinion, we conclude that the trial judge correctly denied Solomon's requests for these jury instructions. We agree with Solomon that a defendant who is charged with DUI is entitled to raise a defense that their ingestion of alcoholic beverages or other intoxicants was unwitting—and that, if the issue is raised and there is evidence to support this defense, then it becomes the State's burden to disprove the defense beyond a reasonable doubt.

■ However, for the defendant to prevail on this defense of unwitting intoxication, the evidence (viewed in the light most favorable to the proposed defense) must establish at least a reasonable possibility that the defendant did not act negligently regarding the circumstance that the beverage or substance they ingested was an intoxicant.

When this issue was litigated at Solomon's trial, Solomon did not dispute that the label on NyQuil bottles prominently declared that the medicine contained 10 percent alcohol. Solomon simply claimed that he did not read this label on either of the two bottles he drank from, and that he was otherwise unaware that NyQuil was an intoxicant. Given this record, even when the evidence is viewed in the light most favorable to Solomon's claim that he was unaware of the intoxicating effect of NyQuil, there was no reasonable possibility that Solomon acted non-negligently regarding this circumstance. Thus, the trial judge was not required to instruct the jury on the defense of unwitting intoxication.

*Underlying facts*

In the early morning hours of December 30, 2007, Fairbanks Police Officer John Merrion was dispatched to investigate a report of a possible drunk driver. The report was made by a taxi driver, who told the police dispatcher that he had observed a vehicle being driven erratically, and that when he contacted the driver (Clarence Solomon), the driver admitted that he was intoxicated.

The axle on Solomon's truck was bent (apparently, because Solomon had run the vehicle into a ditch), so Solomon asked the taxi driver for a ride. The taxi driver refused to give Solomon a ride, but he agreed to follow Solomon as he drove the truck to a nearby gas station. Officer Merrion arrived at the gas station a few minutes after Solomon and the taxi driver.

When Merrion contacted Solomon, he observed that Solomon's eyes were red and watery, that his speech was slurred, and that he swayed back and forth as he stood. Solomon denied consuming alcoholic beverages, but he admitted that he was high on Vicodin. After Solomon performed poorly on several field sobriety tests, Merrion arrested Solomon and transported him to the police station. At the station, Solomon agreed to a breath test. This breath test, which was conducted at about 4:45 in the morning, showed that Solomon had a blood alcohol level of .169 percent (over twice the legal limit). Based on these events, Solomon was charged with driving under the influence.

At trial, Solomon testified that he had not consumed any alcoholic beverages on the night in question, but that he had drunk one and a half 20–ounce bottles of NyQuil (approximately 30 ounces, or a little less than one quart) to treat his flu over the course of the late afternoon and evening. Solomon further testified that he did not read the labels on the NyQuil bottles, and that he was unaware that NyQuil contained alcohol or that NyQuil might otherwise be an intoxicant.

The State sought to rebut this testimony in two ways. First, in response to Solomon's assertion that he did not know that NyQuil was an intoxicant, the State presented evidence that the label on the front of NyQuil bottles declares that NyQuil contains ten percent alcohol. Second, the State presented evidence that even if Solomon had consumed the 30 ounces of NyQuil over the course of the evening (as he claimed), this amount of NyQuil contained so little alcohol (3 ounces of pure alcohol, the equivalent of six shots of 100 proof liquor) that it could not possibly explain Solomon's test result of .169 percent blood alcohol at 4:45 a.m. the following morning. In particular, the State presented expert testimony that if Solomon had consumed the amount of NyQuil he claimed to have consumed, during the time period he claimed to have consumed it, his blood alcohol content at the time of his breath test would have been zero, not .169 percent.

Based on Solomon's testimony about drinking the NyQuil, and about not reading the label, Solomon's attorney asked the trial judge—District Court Judge Jane F. Kauvar—to instruct the jury on the affirmative defense of "involuntary intoxication", and/or to instruct the jury that Solomon could not be convicted of driving under the influence unless the State proved beyond a reasonable doubt that he "knowingly ingested intoxicants". Both of these requests were premised on the same underlying legal assertion: that Solomon could not be convicted of driving under the influence unless the State proved that Solomon subjectively knew that drinking the NyQuil might make him impaired. Indeed, the defense attorney at one point told Judge Kauvar that Solomon's un-

derlying contention could best be described as a claim of "unknowing self-induced intoxication".

Judge Kauvar ruled that Solomon was not entitled to a jury instruction on this defense (whether it was described as an assertion of "involuntary intoxication" or as an assertion that Solomon had not "knowingly" ingested an intoxicant). The judge ruled that, because the NyQuil label clearly stated that the medicine contained alcohol, Solomon was on "constructive notice" that he was consuming an intoxicant—regardless of whether he read the label.

The jury convicted Solomon of driving under the influence, and Solomon now appeals that conviction.

*Why we conclude that Alaska law offers the defense of unwitting intoxication, but that this defense requires proof that the defendant acted non-negligently*

Solomon argues that defendants charged with driving under the influence must be allowed to defend by asserting that their intoxication was unwitting. Solomon further argues that, once this defense is raised, the State must prove (beyond a reasonable doubt) that the defendant actually knew—as opposed to "constructively knew"—that the beverage or substance they ingested was an intoxicant. This, according to Solomon, is the substantive error that occurred in his case: the fact that the trial judge relied on a theory of "constructive knowledge" when she rejected his proposed defense.

Translating the phrase "constructive knowledge" into plain English, the trial judge's ruling was based on the premise that, even if Solomon was subjectively unaware that NyQuil was an intoxicant, Solomon nevertheless *should have known* (based on the wording of the NyQuil label) that NyQuil was an intoxicant. In essence, the trial judge held that the defense of unwitting intoxication was not available to a defendant who acted negligently with respect to the circumstance that the beverage or substance they ingested was an intoxicant.

Solomon argues that it is not enough for the State to prove that a defendant acted negligently—not enough for the State to prove that the defendant "should have known" that the beverage or substance they ingested was an intoxicant. Instead, Solomon takes the position that actual knowledge is required—in other words, that the State should have to prove that the defendant acted "knowingly" with respect to the circumstance that the beverage or substance was an intoxicant.

This is an unresolved issue under Alaska law, and it is made more difficult by the fact that our previous decisions on a related issue—whether the State must prove that DUI defendants were aware that they were under the influence—contain language that provides support for *both* Solomon's view of the law and the trial judge's opposing view.

In *Morgan v. Anchorage*[1] and *State v. Simpson*,[2] this Court addressed the issue of whether, in a prosecution for driving under the influence, the government was required to prove that the defendant acted with a culpable mental state regarding the circumstance that they were under the influence of intoxicants, or that their blood alcohol level exceeded the statutory maximum.

In *Morgan*, we held that no additional culpable mental state was required, once the government proved "that the defendant knowingly ingested intoxicants and knowingly operated or assumed physical control of a motor vehicle."[3] This wording appears to support Solomon's view that, when a DUI defendant asserts that they were ignorant of the intoxicating nature of a beverage, the State must prove that the defendant acted with actual knowledge that the beverage was an intoxicant.

However, the issue presented in *Morgan* and *Simpson* was whether the government was required to prove that the defendant acted with a culpable mental state regarding the circumstance that they were impaired. The defendants in *Morgan* and *Simpson* did not dispute the fact that they knowingly

1. 643 P.2d 691 (Alaska App.1982).

2. 53 P.3d 165 (Alaska App.2002).

3. *Simpson*, 53 P.3d at 167, interpreting *Morgan*, 643 P.2d at 692.

drank or ingested intoxicants, so those cases did not directly present the issue of what culpable mental state might be required with respect to the defendant's awareness that they were drinking or ingesting an intoxicant.

Indeed, we noted in *Simpson* that "[c]riminal law texts on this subject ... suggest that we may have gone too far in *Morgan* when we suggested that [the offense of driving under the influence] invariably requires proof that the defendant knowingly ingested alcohol or other intoxicants." [4] For instance, in Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), the authors discuss the relationship between the defense of involuntary intoxication and the crime of driving under the influence. In their discussion, Professors Perkins and Boyce point out that even when a defendant becomes intoxicated through the trickery of others, or as a result of a completely innocent mistake concerning the nature of a beverage or substance, the defendant can still properly be convicted of DUI if the government proves that the defendant realized that they were impaired but still drove or continued to drive. [5]

A few years after this Court issued our decision in *Simpson,* we were again confronted with the argument that, as a matter of due process, the State must be required to prove a culpable mental state with respect to a defendant's awareness of the circumstance that they were impaired or that their blood alcohol content was .08 percent or higher. The defendant in *Valentine v. State,* 155 P.3d 331 (Alaska App.2007), [6] argued that, under the due process clause, the State was required to prove that a defendant acted at least negligently with respect to this circumstance.

The defendant in *Valentine* relied on the Alaska Supreme Court's decision *State v. Hazelwood,* 946 P.2d 875 (Alaska 1997). In *Hazelwood,* the supreme court declared that

when a criminal statute proscribes conduct only when a particular circumstance is present, a conviction under that statute must be predicated on a finding that the defendant was at least negligent with respect to that circumstance. *Id.* at 879.

In our decision in *Valentine,* we acknowledged that *Hazelwood* accurately described Alaska law on this issue. For instance, our supreme court has held that a defendant cannot be convicted of transporting illegally taken game unless the defendant was at least negligent with respect to the fact that the game was illegally taken—because if the game was not illegally taken, transporting it would not be a crime. [7]

However, we concluded that proof of negligence is normally an implicit element of the government's case in a DUI prosecution— because, typically, the government will prove that a DUI defendant knowingly ingested an intoxicating substance:

> Valentine argues ... that a person cannot be convicted of driving while under the influence unless the person was at least negligent with respect to the circumstance of being legally intoxicated—because drinking and driving is otherwise not sanctionable. This claim fails [because] proof that the defendant was legally intoxicated and that the defendant knowingly consumed alcohol and drove is sufficient to establish that the defendant was negligent with respect to the circumstance that he was too impaired to legally drive. We therefore reject Valentine's claim that the [DUI] law is unconstitutional because it imposes criminal liability without proof of *mens rea.*

*Valentine,* 155 P.3d at 343.

This passage from *Valentine* arguably supports the trial judge's ruling in the present case: the ruling that Solomon was not entitled to litigate the defense of unwitting intoxication because Solomon was at least negli-

---

**4.** 53 P.3d at 167.

**5.** *Simpson,* 53 P.3d at 167–68, discussing and quoting *Perkins & Boyce,* p. 999.

**6.** Reversed on a different issue in *Valentine v. State,* 215 P.3d 319 (Alaska 2009).

**7.** *Valentine,* 155 P.3d at 343, citing *Hazelwood's* discussion of *State v. Rice,* 626 P.2d 104, 108 (Alaska 1981).

gent regarding the circumstance that NyQuil was an intoxicant.

To sum up this discussion of *Morgan, Simpson,* and *Valentine:* Solomon argues that the government must prove that a DUI defendant "knowingly" ingested an intoxicant, while the State takes the position that proof of the defendant's negligence is sufficient. Our prior case law provides no definitive answer to this question. Indeed, the inferences that might be drawn from our prior decisions seemingly lead to different conclusions.

Because our prior decisions do not provide a clear answer to the issue raised in Solomon's case, we have examined the decisions reached by courts in other states when DUI defendants asserted that they unwittingly drank or ingested an intoxicant.

Our research reveals that many states recognize a potential defense of unwitting intoxication in DUI prosecutions. However, the defense is not as broad as the one proposed by Solomon. In these jurisdictions, the government need not invariably prove that the defendant acted "knowingly" with respect to the intoxicating nature of the beverage or substance—*i.e.,* that the defendant was subjectively aware of this fact. Rather, a DUI conviction is proper if the government can establish that the defendant acted at least negligently with respect to the fact that the beverage or substance was an intoxicant. In other words, the government must prove that the defendant either knew or *should have known* of this fact.

Before we discuss the cases from other jurisdictions, we need to discuss the Model Penal Code definition of "self-induced intoxication" because the cases from other states often discuss this definition in their analyses.

Model Penal Code § 2.08 defines the circumstances in which intoxication does or does not relieve a person of criminal responsibility. Subsection 2.08(5)(b) defines the concept of "self-induced" intoxication (the close equivalent of what has traditionally been referred to as "voluntary intoxication").

As defined in Model Penal Code § 2.08(5)(b), "self-induced intoxication" means "intoxication caused by substances that the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them [into his body] pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime[.]"

For purposes of Solomon's case and the defense of unwitting intoxication that he proposes, the relevant portion of the Model Penal Code definition is found in its first two clauses. Under the Model Penal Code, unwitting intoxication would not be a defense to a charge of driving under the influence if (1) the defendant knowingly introduced the intoxicating substance into their body, and (2) the defendant knew or *ought to have known* of "the tendency of [this substance] to cause intoxication". In other words, under the Model Penal Code, DUI defendants would be held culpable if they acted negligently regarding the circumstance that the substance was an intoxicant.

In *Commonwealth v. Smith,* 2003 Pa.Super. 301, 831 A.2d 636 (Pa.App.2003), the court relied on the Model Penal Code definition of "self-induced intoxication" in a case that raised the question of whether "involuntary intoxication" (which, under the court's formulation, included unwitting intoxication) should be recognized as a defense to a prosecution for driving under the influence. The court declared that "a key component [of an involuntary intoxication defense] is lack of culpability on the part of the defendant in causing the intoxication." *Id.* at 639.

In *Smith,* the defendant claimed that she unexpectedly became intoxicated after she took a prescribed medicine and then "voluntar[ily] ingest[ed] . . . an allegedly moderate amount of alcohol". *Id.* The court noted that, even under the defendant's version of events, her intoxication was "self-induced" as defined in the Model Penal Code. The court then held that the Model Penal Code formulation was consistent with Pennsylvania law—and that, as a result, the defendant had no valid defense to the DUI charge. *Id.* at 639–640. In particular, the court noted that the evidence, even viewed in the light most favorable to the defendant, "established that [the defendant] drank alcohol without regard

to the effects of its combination with [the] medication she was taking.... [T]hese facts ... cannot establish involuntary intoxication." *Id.* at 640.

The California Court of Appeal applied a similar analysis in *People v. Chaffey*, 25 Cal. App.4th 852, 30 Cal.Rptr.2d 757 (1994). The defendant in *Chaffey* took an overdose of a prescription drug (120 tablets of Xanax) in an attempt to commit suicide, and then (in an unconscious state) began driving her car. *Id.* at 757. Citing Model Penal Code § 2.08(5)(b), the appeals court upheld the defendant's conviction for driving under the influence. The court reasoned that the trier of fact at Chaffey's trial could conclude that the intoxicating effect of the drug was reasonably foreseeable, given the amount that the defendant voluntarily ingested, and given the fact that the Xanax label warned that the medication would cause drowsiness. *Id.* at 759–760. The court concluded:

> This case is not so different than if Chaffey had consumed alcohol instead of Xanax. It is true[,] as Chaffey points out[, that] sleepiness behind the wheel as a result of ingestion of alcohol is a matter of common knowledge, well within the experience of the average person. Although Xanax may not be as well known as alcohol, it was reasonably foreseeable ... that [the drug would place] Chaffey ... in a state of intoxication.

*Chaffey*, 30 Cal.Rptr.2d at 760. In other words, the California court concluded that the trier of fact could reasonably have found that Chaffey acted at least negligently regarding the circumstance that the prescription medicine would make her intoxicated. *Id.*

In *Commonwealth v. Wallace*, 14 Mass. App.Ct. 358, 439 N.E.2d 848 (1982), the defendant took a prescription medicine, chlordiazepoxide (popularly known as "Librium"), and then drove a motor vehicle and was involved in an accident. He was charged with operating a motor vehicle while under the influence of drugs. *Id.* at 849. At trial, the judge precluded Wallace from offering evidence that he had no knowledge of the effects of the medication, and that he had not

received warnings about using the drug before driving. *Id.*

The Massachusetts appeals court held that the law should recognize a defense of unwitting intoxication, so that "perfectly innocent and well-intentioned[,] careful persons" would not be subjected to criminal penalties "under circumstances which ... would not subject [them] to liability for damages in a civil proceeding". *Id.* at 851. Accordingly, the court concluded that it was error for the trial judge to preclude Wallace from introducing evidence that he had no advance knowledge or warning that the medicine was an intoxicant. *Id.* at 852–53. But then the Massachusetts court added:

> We do not imply that a jury could not in some instances find that a defendant had information sufficient to place on him a duty of inquiring of his doctor as to the possible effects of a prescription drug. In such circumstances, a conviction [for driving under the influence] would be proper if it is found that the defendant was negligent in not asking, and hence not knowing, of such possible effects on his driving.

*Wallace*, 439 N.E.2d at 853 n. 15. In other words, the Massachusetts court restricted the defense of unwitting intoxication to defendants who acted reasonably—that is, nonnegligently—with regard to the circumstance that the substance they ingested was an intoxicant.

We are persuaded by these decisions, and by the approach advocated in the Model Penal Code, that Alaska law should recognize a defense of unwitting intoxication. However, this defense is available only to defendants who make a reasonable, non-negligent mistake concerning the intoxicating nature of the beverage or substance that they ingested. The defense is not available if the defendant knew or ought to have known that the beverage or substance was an intoxicant.

We acknowledge that, because we adopt a negligence standard, defendants will sometimes be convicted of driving under the influence even though they had no subjective awareness of the risk that the beverage or substance they ingested was an intoxicant— in other words, they acted negligently but not "recklessly" as defined in AS

11.81.900(a)(3). Solomon argues that imposition of criminal liability without proof that the defendant had at least some level of subjective awareness of wrongdoing violates the guarantee of due process of law. But this argument was rejected by our supreme court in *State v. Hazelwood:*

> [C]riminal convictions must be predicated on criminal intent. In other words, there must be some level of mental culpability on the part of the defendant. However, this principle does not preclude a civil negligence standard. What it does mean is that we will generally read into a criminal statute some level of mens rea, as opposed to strict criminal liability. It is strict liability, and not the negligence standard, which is an exception to the rule which requires criminal intent. The requirement of criminal intent does not emphasize a specific awareness of wrongfulness.

> Th[is] point is illustrated by *State v. Guest,* 583 P.2d 836 (Alaska 1978), and [*State v.*] *Rice,* 626 P.2d [104 (Alaska 1981)]. In each case, we upheld the imposition of criminal sanctions on the basis of simple, ordinary negligence. *Guest* approved [a jury] instruction that the defendant was not guilty of statutory rape if he reasonably believed his victim was of consenting age. In effect, we sustained prosecution on charges that the defendant was negligent as to the victim's age. Similarly, *Rice* read into a criminal prohibition on transportation of illegally taken game a requirement that the defendant was at least negligent as to the fact the game was illegally taken. In both cases, a mens rea of simple or ordinary negligence was made the basis of the offense.

> . . .

> Outside of [offenses that can lawfully be grounded on] strict liability . . . , [a] showing of simple civil negligence is both necessary and sufficient under Alaska's Constitution. Negligence, rather than gross

negligence, is the minimum[.] . . . [T]he negligence standard is constitutionally permissible because it approximates what the due process guarantee aims at: an assurance that criminal penalties will be imposed only when the conduct at issue is something society can reasonably expect to deter.

*Hazelwood,* 946 P.2d at 878–79 & 884 (citations, footnotes, and internal quotation marks omitted).

Based on the supreme court's decision of this point in *Hazelwood,* we conclude that the "knew or should have known" formulation we adopt today is constitutional.

■ In addition, as we discussed in *State v. Simpson,*[8] the defense of unwitting intoxication is not available to defendants who initially become intoxicated unwittingly but who then realize their impairment and yet continue to drive.

■ To summarize: If, in a DUI prosecution, there is evidence that the defendant unwittingly became intoxicated because of a reasonable, non-negligent mistake about the intoxicating nature of the beverage or substance they ingested, then the defendant is entitled to a jury instruction on this defense, and it becomes the government's burden to disprove this defense beyond a reasonable doubt—either by proving that the defendant acted at least negligently, or by proving that the defendant came to realize their impairment but continued to drive. See the definition of "defense" codified in AS 11.81.900(b)(19).[9]

*Application of this law to the facts of Solomon's case*

■ As we explained early in this opinion, Solomon introduced evidence at his trial (1) that his intoxication stemmed from his ingestion of approximately one quart of NyQuil cold medicine; (2) that he did not read the label on the NyQuil bottles (which would have warned him that NyQuil contained 10

8. *Simpson,* 53 P.3d at 167–68, discussing and quoting *Perkins & Boyce,* p. 999.

9. AS 11.81.900(b)(19) declares that, for defenses other than "affirmative defenses" (*i.e.,* other than defenses where the defendant bears the burden of proof), the government "has the burden of disproving the existence of the defense beyond a reasonable doubt" if "some evidence [is] admitted which places in issue the defense".

percent alcohol); and (3) that he remained subjectively unaware that NyQuil contained alcohol or that NyQuil might otherwise be an intoxicant.

Solomon would be entitled to a jury instruction on the defense of unwitting intoxication only if the evidence (viewed in the light most favorable to the proposed defense) would have been sufficient to support the conclusion that Solomon acted non-negligently with respect to the circumstance that NyQuil was an intoxicant. Here, it was undisputed that the label on the NyQuil bottles plainly stated that the medicine contained 10 percent alcohol. Solomon might not have read this label before he drank the quart of NyQuil, but no reasonable jury could conclude that Solomon's failure to read the label was reasonable and non-negligent.

Accordingly, under the facts of Solomon's case, he was not entitled to argue a theory of unwitting intoxication to the jury, and the trial judge did not commit error when she refused Solomon's requests for jury instructions on this defense.

## Conclusion

The judgement of the district court is AFFIRMED.